LAKE COUNTY BAR ASSOCIATION *v.* NEEDHAM.

(D.D. No. 81-3—Decided April 29, 1981.)

118

Mr. Abraham Cantor and Mr. Martin O. Parks, for relator

Mr. Jay A. Hollingsworth and Mr. David E. Cruikshank, for respondent.

Per Curiam. After an examination and review of the record in this cause, this court is unable to concur in the recommendation of the board of commissioners.

As to counts one, two and three, the evidence reveals that in February 1975, Ben F. Steele retained respondent to represent him in the defense of an action by The May Company, which was seeking to foreclose on a certain 1972 judgment lien, marshal liens and sell the real estate of Steele to satisfy the liens. Respondent filed an answer to the foreclosure complaint in March of 1975 and, by May of that year, negotiated settlement in the sum of $850 with Cleveland attorney, Richard C. Mesrobian, representing The May Company. Shortly thereafter, said sum was entrusted to respondent by Steele.

Between May of 1975 and August of 1977, Mesrobian repeatedly telephoned and wrote respondent's office requesting him to please advise "where we stand on this matter." Respondent responded only after Mesrobian wrote the client, Steele, advising that respondent had not delivered the $850. Respondent advised Mesrobian in a letter dated August 29, 1977, that he would be away until September 7, 1977, "after which time I will, at your convenience, meet with you to obtain the necessary satisfactions of judgment ***." No further contact was had with respondent until a pre-trial of the matter on January 31, 1979, despite letters to him dated September 8, 1977, September 30, 1977, March 21, 1978, and October 12, 1978, and numerous telephone calls to his answering service.

At the pre-trial, respondent defended his conduct by stating he would not make payment until he had received satisfactions of judgment. At the pre-trial hearing, Mesrobian, at the judge's suggestion, offered to go immediately across the street to the Painesville Municipal Court and satisfy the judgment liens upon payment of the $850. This offer was declined by respondent.

The matter was scheduled for trial on February 13, 1979, respondent being notified of the date by regular mail and personally by the trial court. On February 9, 1979, the judge's bailiff made two calls to respondent's office, leaving messages for respondent to call the court. By letter of February 8, 1979, Mesrobian sent satisfactions of judgment to the court with instructions to turn them over to the defendant or respondent upon deposit of $917.50. In the event payment was not made, Mesrobian indicated he desired to proceed with the foreclosure action on February 13, 1979. A carbon copy of this letter was sent to respondent. Respondent failed to notify his client of the trial, failed to appear, failed to contact the court and failed to offer an excuse for his failure, and was found in contempt of court. He was ordered to appear on February 23, 1979, to show cause why he should not be sentenced for contempt. His failure to appear at that hearing resulted in a fine of $500 ($400 to be suspended on condition he paid over the funds in his possession to the court or Mesrobian by February 26, 1979). Respondent failed to make such payment, and an arrest order was issued. On February 27, 1979, respondent paid over $850 to the court and the case was subsequently dismissed.

As to counts four and five, the evidence revealed that in mid-September 1977, respondent was advised of the death of Ruby E. Evans and retained by Elaine Miller to represent her in the probate of the estate. On or about November 18, 1977, Miller, principal beneficiary and executrix under the will, supplied respondent with the documents and information needed to commence probate proceedings, including the will, certified copies of the death certificate, real estate deed and abstract of title, inventory of household goods, automobile title, social security papers, financial data, and tax returns. From November 21, 1977, to April 4, 1978, Miller made repeated attempts to contact respondent, first to check on the status of

the proceedings and, then, when no progress was evident, to retrieve her file. The attempts included "numerous" phone calls to respondent's answering service, personal visits to his office, inquiry at nearby offices, visits to the Probate Court and Prosecutor's Office of Lake County, letters by certified mail, and notes left at his office asking him to contact her. Miller testified that all such efforts were to no avail.

Concerned about the furtherance of the administration of the estate, Miller filed a complaint with the relator, and this report was forwarded to respondent. The latter did not respond. Subsequently, Miller, with assistance of counsel, obtained a citation from the Probate Court that respondent appear before the court and show cause why he had not produced the last will and testament of Ruby Evans. Though served with notice, respondent failed or neglected to appear and was ordered incarcerated. Only at such point did the respondent deliver the will to the court.

As to counts six and seven, the evidence reveals that respondent was retained by Barbara Roe in November 1975, to represent her in a divorce action filed by her husband on the grounds of gross neglect of duty. She indicated that she was in favor of terminating the marriage, but instructed respondent to file a counter-claim, as she felt her husband's grounds were very unjust. Respondent did not file an answer or counter-claim to the divorce complaint and did not advise his client of such failure. It was not until after the bifurcated "property division" hearing conducted pursuant to local rule, held on August 19, 1976, that Roe learned her husband had been granted a divorce on the grounds prayed for at the "merit" hearing held on July 30, 1976.

As to count eight, the evidence showed that in June 1973, the aforestated Barbara Roe retained respondent to represent her in a personal injury action arising out of an automobile accident occurring on June 17, 1973. On July 17, 1975, respondent filed a complaint in the Court of Common Pleas of Lake County on behalf of Roe, seeking a judgment in the sum of $25,000. The record shows that Roe, being concerned about the status of the case, began calling the respondent early in 1977 with apparently little information being given to her. A pre-trial conference was set for December 1977, prior to which

Roe met with the respondent to discuss settlement possibilities. Roe testified that the respondent advised her at this time that the insurance company "didn't want to talk about anything until he [respondent] contacted my doctor and got a statement" regarding lost wages. It appears that subsequently Roe called the respondent's office on numerous occasions, attempting to find out if the requested reports had been obtained from her doctor. Only on one occasion was she able to get through to the respondent, and then only to find out that the reports had not been obtained by him from the doctor.

In March 1978, Roe filed a complaint with the relator concerning the matter, and requested a relative who was an attorney, Leonard F. Carr, to assist her in obtaining the file of her personal injury matter. In a telephone conversation with Carr, respondent promised that he would mail the file to Carr. Such was not done. Despite letters to respondent under dates of May 23, June 16, and July 28, 1978, reminding him of the promise to return the file, respondent failed or neglected to forward the file.

It appears that the matter having been ordered to arbitration, the respondent, as attorney of record, had received a letter from the arbitration chairman dated June 30, 1978, that an arbitration hearing would be held on August 31, 1978. There was no request for continuance of such hearing, and the hearing proceeded. Neither the respondent, Roe, nor anyone else appeared at the hearing on behalf of the plaintiff. Carr testified that neither he nor any of his associates appeared on behalf of Roe since he had informed respondent by way of his letter dated July 28th that he considered respondent counsel of record until the file was delivered. The case was dismissed on February 9, 1979, for want of prosecution. This dismissal was upheld by the Eleventh District Court of Appeals.

The Canons of the Code of Professional Responsibility in essence express the standards of professional conduct expected of lawyers with the public, with their clientele, with the courts and the legal system, and with the members of the legal profession generally. In the preface to the Code of Professional Responsibility it is stated that the code embodies "the general concepts from which the ethical considerations and the disciplinary rules are derived."

It is our view that the respondent has not only violated the Disciplinary Rules as charged, which rules are mandatory in character, but also has disregarded the ethical considerations which are "aspirational in character and represent the objectives toward which every member of the profession should strive." Here, the record amply shows that the respondent has engaged in conduct which adversely reflects upon his fitness to practice law, has neglected legal matters entrusted to him, and has refused to withdraw from employment when so discharged by his client or, in the alternative under the facts, has withdrawn without taking reasonable steps to avoid foreseeable prejudice to the rights of his client, and not delivering to the client all papers to which the client is entitled.

In applying the Code of Professional Responsibility within the manner and intent for which it was promulgated, *i.e.,* the protection of the public, the proper functioning of our judicial system, and the maintenance of the dignity and professional respect for the legal profession, we find that the respondent has not measured up to the responsibilities mandated by this code, and is in violation thereof as charged. Therefore, respondent is hereby suspended from the practice of law for a period of one year.

*Judgment accordingly.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.